[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 13, 2009
THOMAS K. KAHN
CLERK

No. 08-17032
Non-Argument Calendar

_____

D. C. Docket No. 08-00208-CR-MHS-1

UNITED STATES OF AMERICA,

Plaintiffs-Appellees,

versus

MICHAEL MORGAN,
a.k.a. Todd Ellis,
a.k.a. Alphonso Martin,
a.k.a. Alphonso Morgan,
a.k.a. Michael Heart,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 13, 2009)

Before TJOFLAT, BIRCH and HULL, Circuit Judges.

PER CURIAM:

On February 25, 2008, at around 2 p.m., Barry Gardner, an Atlanta police officer, was parked in his patrol car in a convenience store parking lot. Several Texaco gas pumps were located in front of the store. At that time, Gardner observed Michael Morgan park near a gas pump, exit his vehicle, and walk towards the store. As he observed Morgan, Gardner noticed a bulge in Morgan's waistband. Suspecting that a handgun caused the bulge, Gardner exited his patrol car and approached Morgan. Gardner had a hand on his handgun, but kept it holstered. Gardner reached Morgan before Morgan got to the store, requested permission to speak to him, and then asked him what the bulge was. Morgan responded: "What bulge," and looked around nervously. At this point, Gardner realized that the bulge concealed a handgun, frisked Morgan, and placed him under arrest.[1]

A Northern District of Georgia grand jury indicted Morgan, who had been convicted of a felony on several previous occasions, for being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He moved the district court to suppress the handgun Gardner had seized and the statements he made at the time of the seizure, contending that Gardner lacked reasonable

---

[1] The above facts were established at the evidentiary hearing held by the magistrate judge on Morgan's post-indictment motion to suppress, as indicated infra.

2

suspicion to stop and frisk him.  The court referred the motion to a magistrate

judge, who held an evidentiary hearing, found that Gardner had reasonable

suspicion for the stop and frisk, and recommended that the district court deny the

motion.  The district court did so.  In its dispositive order, the court held that

> the encounter between [Morgan] and Officer Gardner did not ripen
> into a Terry [2] stop until Officer Gardner had positively identified the
> bulge under [Morgan's] clothing as a gun. . . .  The fact that Officer
> Gardner approached [Morgan] with his hand on his still-holstered
> gun—because of his legitimate concern that [Morgan] might be
> armed—did not convert this initial, consensual encounter into a
> detention.

Following this ruling, the parties agreed to a bench trial based on a joint stipulation

of facts, in which Morgan admitted that he possessed the firearm found on

February 25, 2008, that it was manufactured outside the State of Georgia and had

crossed state lines, and that he had several prior felony convictions.  At the

conclusion of the trial, the court found Morgan guilty as charged.  Following the

imposition of sentence, a prison term of 179 months, Morgan took this appeal.

In his brief, Morgan argues that (1) the prosecution violated his right against

double jeopardy; (2) the district court erred by denying his motion to suppress; and

(3) the Government failed to establish a sufficient nexus between his firearm

offense and interstate commerce, as the Constitution required as a condition

---

[2]  Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968).

3

precedent to his conviction. We consider these arguments in turn.

(1) "The Double Jeopardy Clause protects individuals against . . . a second prosecution for the same offense after conviction." United States v. Mayes, 158 F.3d 1215, 1219 (11th Cir. 1998) (quotation omitted); see U.S. Const. amend. V (providing that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb"). Morgan argues that the instant prosecution violated his right against double jeopardy because he was previously convicted in Fulton County, Georgia of the same felon-in-possession offense. The argument fails, however, because, as he properly concedes, the Supreme Court has rejected it. Abbate v. United States, 359 U.S. 187, 189-96, 79 S.Ct. 666, 668-71, 3 L.Ed.2d 729 (1959) (holding that a defendant's prior conviction in state court did not bar a subsequent federal prosecution for the same conduct).

(2) The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. As an exception to the Amendment's warrant requirement, a police officer may conduct a brief investigative stop if he has reasonable, articulable suspicion that criminal activity is afoot. Terry, 392 U.S. at 30, 88 S.Ct. at 1884-85. Significantly, however, "police-citizen exchanges involving no coercion or

4

detention . . . do[] not implicate Fourth Amendment scrutiny . . . ." United States

v. Perez, 443 F.3d 772, 777 (11th Cir. 2006) (quotation and alterations omitted).

In this respect, "[l]aw enforcement officers do not violate the Fourth Amendment's

prohibition of unreasonable seizures merely by approaching individuals on the

street or in other public places and putting questions to them if they are willing to

listen." United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105, 2110, 153

L.Ed.2d 242 (2002).

Morgan contends that Officer Gardner's initial approach and encounter

constituted a seizure that was not supported by reasonable suspicion.[3]  However,

the record reveals that, prior to frisking Morgan, Gardner did nothing more than

approach Morgan in the parking lot, request permission to speak with him, and ask

him about the bulge in his waistband.  While Gardner had his hand on his still-

holstered firearm during the approach, this fact alone did not transform the

encounter into a seizure.  Accordingly, reasonable suspicion was not required to

support the stop.

(3)  In United States v. McAllister, 77 F.3d 387, 390 (11th Cir. 1996), we

held that, because the government demonstrated that the defendant's firearm had

---

[3] We agree with the Government that, by failing to raise the issue in his initial brief, Morgan has abandoned any argument on appeal challenging the district court's suppression of his incriminating statements. See United States v. Magluta, 418 F.3d 1166, 1185-86 (11th Cir. 2005) (stating that arguments raised for the first time in reply are abandoned).

previously traveled in interstate commerce, § 922(g)(1) was not unconstitutional as applied to him. Morgan stipulated that the firearm at issue was manufactured outside the state of Georgia and therefore crossed state lines prior to his possession. This established the constitutionally required nexus to interstate commerce.

AFFIRMED.